# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ARDEAL ROSEBORO and        )
DIANNE ROSEBORO,           )
                           )
       Plaintiffs,         )
                           )
       v.                  )          1:14CV455
                           )
WINSTON-SALEM/FORSYTH COUNTY )
SCHOOL BOARD OF EDUCATION, )
et al.,                    )
                           )
       Defendants.         )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge on Plaintiffs' Motion to Remand (Docket Entry 18) and Defendants' Motions to Dismiss (Docket Entries 10, 15, 26). For the reasons that follow, the undersigned Magistrate Judge recommends that the Court deny Plaintiffs' instant Motion and grant Defendants' Motions to Dismiss as to all federal-law claims. In addition, the undersigned Magistrate Judge recommends that the Court remand this action to state court for further proceedings on any state-law claims, pursuant to 28 U.S.C. § 1367(c)(3).[1]

## BACKGROUND

In their Amended Complaint, Plaintiffs, Mr. Ardeal Roseboro and Mrs. Dianne Roseboro, allege they suffered severe emotional

---

[1] Although a magistrate judge generally may order a remand, see Thomas v. North Carolina, No. 1:10CV226, 2010 WL 2176075 at *6-8 (M.D.N.C. May 21, 2010) (unpublished), because remand hinges on the dismissal of the federal-law claims, and a magistrate judge may not rule on a motion to dismiss, 28 U.S.C. § 636(b)(1)(A), entry of a recommendation as to remand reflects the most prudent option.

distress and constitutional deprivations as a result of the actions directed by Defendants City of Winston-Salem ("City"), Forsyth County ("County"), Winston-Salem/Forsyth County School Board of Education ("School Board"), Art Paschal ("Paschal"), Paul Puryear ("Puryear"), and Donald Martin ("Martin") toward their grandson, Mr. Victorious Rone. (Docket Entry 8.) Plaintiffs previously stated that, from 2007 through 2011, Mr. Rone attended R.J. Reynolds High School, and that, during the spring of 2008, Mr. Rone received a two-day suspension for allegedly threatening other students. (Docket Entry 5, ¶¶ 8, 13.)[2] Plaintiffs have claimed that, after Mr. Rone served his two-day suspension and returned to school, the school suspended him again for making new threats within the school. (Id. ¶ 11.) According to Plaintiffs, this suspension resulted in Mr. Rone's placement into an in-school suspension status for the remainder of the school year. (Id. ¶ 12.)

Before returning to R.J. Reynolds High School for the 2008-2009 school year, Mr. Rone reportedly learned that the school had assigned him to R.J. Reynolds's Alternative Learning Center. (Id. ¶ 13.) Placement in the Alternative Learning Center allegedly isolated Mr. Rone and prevented him from socializing, working, or

---

[2] Although an amended pleading supersedes the original pleading and renders it of no effect, Young v. City of Mount Rainer, 238 F.3d 567, 572 (4th Cir. 2001), this Memorandum Opinion references the original pleading to construct a coherent background.

2

spending time with any of the other students at R.J. Reynolds High School. (Id. ¶ 15.) Plaintiffs further have alleged that Mr. Rone spent the rest of his high school career in the Alternative Learning Center. (Id. ¶ 13.)

The original Complaint, filed by Mr. Roseboro pro se in Forsyth County Superior Court, asserted five claims for relief against Defendants School Board, Paschal, Puryear, and Martin - without providing any statutory or case citations to make clear the legal basis for such claims. (Id. ¶¶ 18-22.) Said pleading claimed that Mr. Roseboro suffered emotional distress, loss of due process, and unequal protection of the law as a result of his and Mr. Rone's race and gender. (Id.) Two weeks after the filing of the original Complaint, Plaintiffs filed an Amended Complaint eliminating many factual allegations, joining Mrs. Roseboro as a Plaintiff, and adding Defendants City and County. (Docket Entry 8.) Defendants then removed this action on the basis that Plaintiffs' claims sound partly under federal law. (Docket Entry 1 at 2.) Plaintiffs opposed removal and filed their instant Motion claiming that any reference to race and due process in their Amended Complaint invoked only the North Carolina Constitution as opposed to the United States Constitution, and that this Court lacks subject matter jurisdiction. (Docket Entry 18, ¶¶ 3(c) & (d).) Defendants have all moved to dismiss the Amended Complaint. (Docket Entries 10, 15, 26.)

DISCUSSION

At the outset, Plaintiffs' instant Motion challenges whether this Court possesses subject matter jurisdiction. (Docket Entry 18 ¶ 3(d).) Because subject matter jurisdiction represents a threshold issue, this Memorandum Opinion addresses that matter first. See United States v. Wilson, 699 F.3d 789, 793 (4th Cir. 2012) (holding that courts must decide subject matter jurisdiction before other issues). In order to determine whether the Court has subject matter jurisdiction, the undersigned Magistrate Judge must first construe the Amended Complaint to determine what claims Plaintiffs have actually pled. Only if this Court has subject matter jurisdiction can the Court evaluate Defendants' Motions to Dismiss. See id.

A. Construing the Complaint

    i. The Claims

The Federal Rules of Civil Procedure command that pleadings be "construed so as to do justice," Fed. R. Civ. P. 8(e), and courts must construe pro se filings liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007). A case from the United States Court of Appeals for the First Circuit persuasively articulates the proper method for construing a complaint lacking clear identification of the legal bases for any claims. Morales-Vallellanes v. Potter, 339 F.3d 9, 14-15 (1st Cir. 2003). The plaintiff in that case filed an amended complaint against his employer containing four counts of

4

relief without any statutory or other identifying citations. Id. at 14. The First Circuit found it unclear whether the counts arose under the anti-discrimination clause in the plaintiff's collective bargaining agreement or under Title VII of the Civil Rights Act. Id. In order to fulfill the mandate of Federal Rule of Civil Procedure 8(e), the First Circuit broadly construed the complaint as alleging causes of action under both the collective bargaining agreement and Title VII. Id. at 15.

Similarly, Plaintiffs' Amended Complaint lacks citation to any statutory or other authority to demonstrate the legal bases for their claims. The Amended Complaint mentions emotional distress, unequal treatment because of race, and violations of due process. (See Docket Entry 8, ¶¶ 12-21.) One could read the Amended Complaint to raise claims under the common law of North Carolina, the North Carolina Constitution, the United States Constitution, or a combination thereof. With Erickson, Morales-Vallellanes, and Rule 8(e) in mind, the Court should construe the Amended Complaint as raising claims for: (1) negligent infliction of emotional distress under North Carolina law (id. ¶¶ 10-21); (2) intentional infliction of emotional distress under North Carolina law (id.); (3) violations of procedural due process under the North Carolina Constitution, Art. 1, Sec. 19 (id. ¶ 16); (4) violations of equal protection under the North Carolina Constitution, Art. 1, Sec. 19 (id. ¶¶ 17-19); (5) violations of procedural due process under the

Fourteenth Amendment actionable under 42 U.S.C. § 1983 (id. ¶ 16); and (6) violations of equal protection under the Fourteenth Amendment actionable under 42 U.S.C. § 1983 (id. ¶¶ 17-19). Having established the contours of the Amended Complaint, the undersigned Magistrate Judge must determine whether this Court possesses subject matter jurisdiction.

### ii. Subject Matter Jurisdiction

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). To determine whether a court has subject matter jurisdiction after a removal petition, the Court must analyze the operative complaint when removal occurred. See Pinney v. Nokia, Inc., 402 F.3d 430, 443 (4th Cir. 2005); see also Hook v. Morrison Milling Co., 38 F.3d 776, 780 (5th Cir. 1994) ("[A] post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, *does not* divest the district court of its properly triggered subject matter jurisdiction." (emphasis in original)).

This Court clearly possesses subject matter jurisdiction over Plaintiffs' two Section 1983 claims. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Although Plaintiffs have attempted to clarify that they did not intend to assert any federal-law claims in their Amended Complaint (see Docket Entry 18, ¶¶ 3(b)-(d)), the determination of whether the Court has subject matter jurisdiction for a removal petition focuses on the operative complaint at the time of removal, see Pinney, 402 F.3d at 443. At the time of removal, Plaintiffs had, however inartfully, pled two Section 1983 claims, thereby providing this Court with subject matter jurisdiction under Section 1331.[3] Accordingly, Plaintiffs' instant Motion lacks merit.

B. Motions to Dismiss

Defendants have moved for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docket Entries 10, 15, 26.) On a 12(b)(6) motion, a court should dismiss a complaint if "it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'[W]holly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.'" Doe v. Virginia Dep't. of State Police, 713

---

[3] The Court possesses supplemental jurisdiction over the related state-law claims. See 28 U.S.C. § 1367(a).

7

F.3d 745, 754 (4th Cir. 2013) (quoting Catholic League for Religious and Civil Rights v. City and Cnty. of S.F., 624 F.3d 1043, 1080 (9th Cir. 2010)). Plaintiffs must plead "factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson, 551 U.S. at 94, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine [the] requirement that a pleading contain more than labels and conclusions . . . ." Giarratano, 521 F.3d at 304 n.5 (internal quotation marks omitted) (dismissing pro se complaint). For the reasons detailed below, Plaintiffs have failed to state a claim for violations of Section 1983, and those claims should be dismissed.

i. Defendant School Board

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original).[4] "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability

---

[4] School boards constitute the equivalent of municipalities for purposes of Section 1983. Monell, 436 U.S. at 696.

8

attach." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Riddick v. School Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). "To state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettitford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008).

Here, Plaintiffs have not alleged that any official custom or policy of Defendant School Board caused the alleged constitutional deprivations. Plaintiffs' Amended Complaint lacks any mention of a policy or custom of Defendant School Board, and this failure alone provides a sufficient basis to grant a motion dismiss, see Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009) (affirming dismissal of a complaint where the plaintiffs failed to allege a policy or custom of the defendant county in a Section 1983

9

claim).  Moreover, the Amended Complaint (like the original Complaint) lacks any factual matter that could support any such allegation.  (See Docket Entry 8.)  Even assuming Plaintiff had successfully pled the existence of a custom or policy that could trigger liability for Defendant School Board, Plaintiffs would still fail to state a claim because Plaintiffs do not adequately allege a deprivation of procedural due process or equal protection.

### a. Procedural Due Process

"In order for [Plaintiffs] to succeed on [their] procedural due process claim, [they] must show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011).  "At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard."  Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 146 (4th Cir. 2014).  Furthermore, a due process violation "'is not complete unless and until the State fails to provide due process.'" Tri-County Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 437 (4th Cir. 2002) (quoting Fields v. Durham, 909 F.2d 94, 98 (4th Cir. 1990)).  Failure to utilize existing procedures precludes a due process violation. See Kendall, 650 F.3d at 530 (citing Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 423 (3rd Cir. 2008)).

10

In this case, the Amended Complaint does not adequately allege that Defendant School Board denied Plaintiffs due process. Specifically, assuming that Plaintiffs possessed some protected interest, the Amended Complaint alleges neither that Defendant School Board denied Plaintiffs an opportunity to be heard, nor that Defendant School Board failed to adopt proper procedures. (See Docket Entry 8.) Even in the original Complaint, Mr. Roseboro only alleged that "[he] attempted to meet with named Defendants to address issues related to the initial two day suspension, the in school suspension, and the assignment to the Alternative Learning Center at the R.J. Reynolds High School." (Docket Entry 5, ¶ 16.) This allegation does not sufficiently support a finding that Defendant School Board denied Plaintiffs due process because it does not state that Defendants actually denied Mr. Roseboro an opportunity to be heard. Mr. Roseboro alleges only that he tried to meet with the individual Defendants, not that they rebuffed his efforts in any improper way. (Id.) As such, Plaintiffs have failed to allege a deprivation of procedural due process.

### b. Equal Protection

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or

>     purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Classifications based on race must pass strict scrutiny, Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 720 (2007), and classifications based on gender must pass intermediate scrutiny, H.B. Rowe Co., Inc. v. Tippett, 615 F.3d 233, 242 (4th Cir. 2010).

According to the conclusory allegations of the Amended Complaint, "because of [Plaintiffs'] race, Black Americans, and Gender(s), Black Man and Black Woman, [] they were subjected to treatment that white or non-Black people would not be subjected too [sic]." (Docket Entry 8, ¶ 17.) The Amended Complaint, however, does not allege any facts to show how Defendants treated Plaintiffs differently compared to similarly situated individuals – in this case, non-Black American parents or guardians of children placed in the Alternative Learning Center. The conclusory statement that Defendants treated Plaintiffs differently does not by itself make the claim plausible. Iqbal, 556 U.S. at 678 (stating that Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Under these circumstances, Plaintiffs have failed to allege a deprivation of equal protection.

### ii. Defendants City and County

In North Carolina, the authority to direct and manage school institutions and their personnel falls under the province of the local school board. See N.C. Gen. Stat. § 115C-40 ("Local boards of education, subject to any paramount powers vested by law in the State Board of Education or any other authorized agency shall have general control and supervision of all matters pertaining to the public schools in their respective local school administrative units . . . ."); N.C. Gen. Stat. § 115C-36 ("Said boards of education shall have general control and supervision of all matters pertaining to the public schools in their respective administrative units . . . ."). Furthermore, the school board employs the superintendent, and the superintendent recommends individuals for other positions. See N.C. Gen. Stat. § 115C-47(13) ("The local boards of education shall elect superintendents . . . ."); N.C. Gen. Stat. § 115C-276(j) ("It shall be the duty of the superintendent to recommend and the board of education to elect all principals, teachers, and other school personnel in the administrative unit.").

To the extent Plaintiffs' Amended Complaint relies on the doctrine of *respondeat superior* to establish liability for Defendants City and County, any Section 1983 claims fail as a matter of law. See Monell, 436 U.S. at 691. As an initial matter, because, by law, Defendant School Board, not Defendants City and/or

13

County, employs school employees (including the individual Defendants), *respondeat superior* does not lie against Defendants City and County. See Estes v. Comstock Homebuilding Co., Inc., 195 N.C. App. 536, 540, 673 S.E.2d 399, 402 (2009) (requiring for *respondeat superior* that "the relation of master and servant, employer and employee, or principal and agent, existed between the one sought to be charged and the alleged *tort feasor*" (emphasis in original) (quoting Van Landingham v. Sewing Mach. Co., 207 N.C. 355, 357, 177 S.E. 126, 127 (1934))). Although Plaintiffs allege that Defendants City and County employ or employed the individual Defendants, the Court need not accept such conclusory assertions as true, particularly given the above-cited North Carolina General Statutes that show otherwise. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Furthermore, for the same reasons that Plaintiffs failed to state a Section 1983 claim against Defendant School Board, Plaintiffs have failed to state a Section 1983 claim against Defendants City and County. First, Section 1983 claims cannot proceed based on a *respondeat superior* theory. See Monell, 436 U.S. at 691. Second, Plaintiffs have not alleged an official policy or custom of Defendants City or County, executed by the individual Defendants, that caused a deprivation of constitutional rights. See Carter, 164 F.3d at 218 (holding that "a municipality

14

is only liable under section 1983 if it causes such a deprivation through an official policy or custom"). Finally, even assuming Plaintiffs had alleged a custom or policy of Defendants City and County, Plaintiffs failed to sufficiently allege a constitutional deprivation for the reasons stated above in parts B.i.a and B.i.b. Therefore, all federal-law claims against Defendants City and County should be dismissed.

### iii. Individual Defendants

"In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation omitted). Plaintiffs' Amended Complaint lacks reference to any acts by Defendants Paschal, Puryear, and Martin. (Docket Entry 8.) Accordingly, Plaintiffs have not alleged how Defendants Paschal, Puryear, and Martin "acted personally in the deprivation of the [Plaintiffs'] rights," Wright, 766 F.2d at 850.[5] Plaintiffs cannot maintain a Section 1983 claim under such circumstances. See Iqbal,

---

[5] In the original Complaint, Mr. Roseboro pled that Defendant Paschal searched Mr. Rone upon his return to school after his first suspension (Docket Entry 5, ¶ 9), and that Mr. Roseboro attempted to meet with Defendants Paschal, Martin, and Puryear to discuss Mr. Rone's suspension (Id. ¶ 16). Even considering these factual allegations, no basis exists for liability as to due process or equal protection violations for the reasons stated in parts B.i.a and B.i.b.

15

556 U.S. at 678 (stating that Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

C. Retaining Jurisdiction

Upon dismissal of the federal-law claims this Court could retain jurisdiction over any state-law claims pursuant to either 28 U.S.C. § 1367 or the doctrine of ancillary jurisdiction as requested by Defendants School Board, Puryear, Paschal, and Martin (Docket Entry 21 at 4-9). For the reasons stated below, the undersigned Magistrate Judge will recommend remand instead.

i. Supplemental Jurisdiction

Section 1367 grants federal courts jurisdiction to hear certain state-law claims - even after the original basis for federal subject matter jurisdiction disappears; however, Section 1367 does not mandate retention of supplemental jurisdiction. See 28 U.S.C. § 1367(c); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."). In deciding whether to retain jurisdiction, courts have considered various factors, including: the convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. See Shanaghan, 58 F.3d at 110.

In reviewing the factors, remand represents the best course of action in this case. In particular, upon the dismissal of all

federal-law claims in the early stages of the litigation, remand to state court best promotes the values of economy, convenience, fairness, and comity. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims."). Therefore, pursuant to 28 U.S.C. § 1367(c)(3) the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

### ii. Ancillary Jurisdiction

Defendants School Board, Puryear, Paschal, and Martin have also invited this Court to retain jurisdiction under the doctrine of ancillary jurisdiction. (See Docket Entry 21 at 4-9.) The Supreme Court has recognized the doctrine of ancillary jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378-79 (1994). The Supreme Court further identified situations that trigger ancillary jurisdiction as involving at least one of the two following needs: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its

authority, and effectuate its decrees." Id. at 379-80 (internal citations omitted).

Defendants argue that this case falls within the first category. (Docket Entry 21 at 5-7.) Defendants have not provided, and the undersigned Magistrate Judge has not found, any authority to suggest that ancillary jurisdiction mandates the Court hear this case; rather, Defendants' own brief suggests that the Court has discretion in exercising ancillary jurisdiction. (See Docket Entry 21 at 4 (stating "this Court should retain jurisdiction" (emphasis added)).) "The boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity," Garcia v. Teitler, 443 F.3d 202, 208 (6th Cir. 2006), and the undersigned Magistrate Judge sees no compelling reason for Plaintiffs' state-law claims to proceed in this Court. Any rationale offered by Defendants does not trump the justifications cited in relation to declining supplemental jurisdiction. Under these circumstances, the Court should deny Defendants' invitation to retain jurisdiction based on the doctrine of ancillary jurisdiction.

## CONCLUSION

For the reasons stated above, the Amended Complaint gives rise to federal question jurisdiction, all federal-law claims fail as a matter of law, and any state-law claims should proceed in state court.

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' Motion to Remand (Docket Entry 18) be denied.

**IT IS FURTHER RECOMMENDED** that Defendants' Motions to Dismiss (Docket Entries 10, 15, 26) be granted in part in that Plaintiffs' claims under 42 U.S.C. § 1983 for violations of procedural due process and of equal protection under the United States Constitution be dismissed.

**IT IS FURTHER RECOMMENDED** that, as to any state-law claims, this action be remanded to the General Court of Justice, Superior Court Division, Forsyth County, North Carolina pursuant to 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld  
**L. Patrick Auld**  
**United States Magistrate Judge**

October 15, 2014